IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NEHEMIAS MEJIA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**NBCUNIVERSAL MEDIA, LLC, et al.,**<br><br>**Defendants.** | Civil No.: 8:19-cv-01563-GJH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
<u>TO STRIKE CLAIM FOR PUNITIVE DAMAGES</u>**

Defendant Telemundo Mid-Atlantic LLC ("Telemundo"), owner and operator of WZDC Telemundo 44, by its undersigned attorneys, hereby moves the Court to dismiss Plaintiff's Amended Complaint or, in the alternative, to strike Plaintiff's claim for punitive damages because the Amended Complaint fails to allege facts upon which the requested relief can be granted.

**INTRODUCTION**

This is a defamation case arising from a Spanish-language television news segment that accurately reported Plaintiff Nehemias Mejia's arrest for stealing an automobile, driving while intoxicated, evading the police, and leaving the scene of an accident after hitting a police car. Mejia is currently in the custody of the Virginia Department of Corrections to serve punishment for his crimes.

During WZDC's news report on Mejia's crimes, while the banner across the bottom of the screen included an error, the broadcast as a whole was accurate. Mejia's defamation action therefore should be dismissed for failure to state a claim on two separate grounds. First, taken as a whole—as the law requires—the broadcast is not capable of the defamatory meaning alleged.

Second, even if the broadcast as a whole could support this claim, Mejia's conclusory and boilerplate allegations of fault—a required element of the defamation cause of action—are insufficient to state a plausible claim.

In the alternative, the Court should strike Mejia's demand for punitive damages. The Amended Complaint fails to allege any facts plausibly establishing the high burden of "actual malice," as required under the First Amendment to the U.S. Constitution, and Maryland law, for the recovery of such damages.

For these reasons, Telemundo respectfully requests that the Court dismiss Plaintiff's Amended Complaint, with prejudice, or in the alternative, strike his claim for punitive damages.

## FACTUAL BACKGROUND

The Amended Complaint admits that Mejia was arrested on June 8, 2018. *See* Amended Complaint, Dkt. 11, ¶ 6 (acknowledging arrest). Specifically, he was arrested in Arlington, Virginia for—and has since pled guilty to—driving while intoxicated, grand larceny (automobile), failure to stop at the scene of an accident, and eluding the police. *See* Exhibit A (Sentencing Orders).[1] He is currently in the custody of the Virginia Department of Corrections as punishment for his crimes.

Telemundo Mid-Atlantic LLC owns and operates the television station Telemundo 44, operating under the call sign "WZDC." Am. Compl. ¶ 2. On June 11, 2018, WZDC reported on Plaintiff's arrest. The broadcast reported that:

---

[1] The Court may take judicial notice of the public records of Mr. Mejia's prosecution, tendered here by Telemundo. *See, e.g., Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record." (citations omitted)); *Fusaro v. Davitt*, 327 F. Supp. 3d 907, 916-17 (D. Md. 2018) (allowing consideration of prosecution records on Rule 12(b)(6) motion), *appeal filed*, No. 18-2167 (4th Cir. Oct. 4, 2018).

> In Arlington[,] Virginia, authorities arrested a Hispanic man for allegedly stealing a vehicle. This is Nehemias Mejia from Riverdale[,] Maryland. According to police, a vehicle had been reported stolen in Prince George's County. In locating it in Arlington, officials tried to detain him. However, the suspect fled the scene and crashed into a police vehicle. He later tried to flee on foot but was arrested. He faces charges of stealing a vehicle, driving under the influence of alcohol, and assaulting a police officer among others.

A copy of the broadcast at issue and certified translation are attached as Exhibits B & C.[2] The Amended Complaint does not dispute, asserts no claimed based upon—and, in fact, doesn't even make any mention of—this reporting. For a portion of the broadcast, the banner on the screen mistakenly read, "Arestado por Agresión Sexual" ("arrested for sexual aggression").

Plaintiff filed this action on April 24, 2019, in the Circuit Court for Prince George's County, Maryland, and the Defendants removed the case to this Court on May 28, 2019, pursuant to 28 U.S.C. §§ 1332(a), 1441, 1446. Dkt. 1. Mejia originally named 17 corporate defendants related to Telemundo or its parent companies. Following an agreed extension, and disclosure that Telemundo Mid-Atlantic LLC owns and operates WZDC, Mejia filed an amendment asserting the same defamation claim only against Telemundo. The operative Amended Complaint disregards the full content of the broadcast, claiming instead that Telemundo reported "that the Plaintiff had been arrested in Prince George's County for sexual assault." Am. Compl. ¶ 7. The Amended Complaint also alleges summarily that Telemundo acted "negligently," without alleging any facts in support of this conclusion, and seeks

---

[2] Courts considering motions to dismiss or for judgment on the pleadings may, without converting the motion to one for summary judgment, consider documents "integral to and explicitly relied on in the complaint" such as the broadcasts and online postings that, as here, a defamation plaintiff claims are actionable. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Watkins v. Cable News Network, Inc.*, No. GJH-17-780, 2018 WL 1970747, at *1 n.4 & 7 (D. Md. Apr. 25, 2018).

3

"compensatory and punitive damages, plus interest and costs" in excess of $75,000. *Id.* at ¶ 10, p. 4.

## ARGUMENT

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012). A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal marks and citation omitted). Although the Court must accept the truth of well-pleaded facts in the non-moving party's pleadings, it may ignore "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *Watkins*, 2018 WL 1970747, at *3 ("The Court need not, however, accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." (citations omitted)).

To state a claim for defamation under Maryland law, a plaintiff must properly plead that "(1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Offen v. Brenner*, 553 F. Supp. 2d 565, 568-69 (D. Md. 2008) (quoting *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007)), *aff'd*, 334 F. App'x 578 (4th Cir. 2009) (per curiam). As the Fourth Circuit noted in affirming a ruling by this Court, the judge considering a dispositive motion under Rule 12 "is not required to accept as true . . . allegations that contradict

matters properly subject to judicial notice or by exhibit." *Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14, 15 (4th Cir. 2008) (internal marks and citations omitted).

### A. Plaintiff's Amended Complaint Should Be Dismissed Because The Broadcast, Taken As A Whole, Is Not Capable Of A Defamatory Meaning.

As a threshold question of law, the Court must determine whether a challenged publication, <u>evaluated as a whole</u>, reasonably conveys an alleged defamatory meaning. *See Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995) ("In determining the defamatory quality of a publication, which is a question of law for the court, the article must be read as a whole."). An important aspect of this inquiry is that "the publication must be read as a whole." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (citation omitted). In other words, courts must consider the allegedly defamatory statement in its full context, "includ[ing] all parts of the communication that are ordinarily heard or read with it." Restatement 2d of Torts § 563 cmt. d; *Mayfield*, 674 F.3d at 378 ("Perhaps most importantly, we must not forget the context in which the allegedly slanderous statements are made . . . ."). As the Maryland Court of Appeals explained:

> The threshold question of whether a publication is defamatory in and of itself, or whether, in light of the extrinsic facts, it is reasonably capable of a defamatory interpretation is for the court upon reviewing the statement as a whole; words have different meanings depending on the context in which they are used ***and a meaning not warranted by the whole publication should not be imputed.***

*Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992) (emphasis added); *see Hohman v. A. S. Abell Co.*, 407 A.2d 794, 797 (Md. Ct. Spec. App. 1979) ("It would be a dangerous doctrine, and tend to promote grave injustice, to permit words to be withdrawn from others with which they are connected and used by the publisher, and then impute to them a meaning not warranted by the whole publication." (citations omitted)).

If the publication as a whole does not convey the defamatory message alleged, then the publication is not actionable, even if it contains an inaccuracy or error. *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) ("If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'" (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)));[3] *Browning v. Wash. Post Co.*, 92 F.3d 1177 (table), 1996 WL 439070, at *3 (4th Cir. Aug. 6, 1996) ("Reading the entire article, we also do not find that the article is susceptible of a defamatory meaning."); *see also Orr v. Argus-Press Co.*, 586 F.2d 1108, 1112 (6th Cir. 1978) ("[I]t is not essential that the literal truth be established in every detail as long as the article contains the gist of the truth as ordinarily understood.").

Courts throughout the country apply this rule of construction in a variety of contexts, including claims where plaintiffs have relied solely on headlines, photograph captions, or other discrete elements, while urging the courts to ignore the remainder of a publication. *See, e.g., Fernandes v. Tenbruggencate*, 65 Haw. 226, 230 (1982) (collecting cases) ("[T]he majority of jurisdictions support the rule that headlines are generally to be construed in conjunction with their accompanying articles."); *Molin v. Trentonian*, 687 A.2d 1022, 1023-24 (N.J. Super. Ct. App. Div. 1997) ("However, the majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles.").

---

[3] In that decision, a reporter "made a number of statements that were incorrect," but these statements, "although false, did not cause the story to produce a different effect on the audience than would have been produced had the truth of the matter been spoken. Since they were immaterial, the false statements were not defamatory." *Id.* at 1002-04. Here, too, the inaccuracy in the headline does not materially change the meaning, albeit for a different reason. In *AIDS Counseling & Testing Ctrs.*, the inaccuracies were outweighed by the accurate facts, which would have similarly shaped a viewer's perception of the plaintiff. *Id.* at 1004. Here, the inaccuracy would be obvious to any viewer and therefore would not change the viewer's understanding of the broadcast as a whole.

For example, the U.S. District Court for the Northern District of Ohio dismissed a libel claim based on an article's headline because the headline, taken together with the article, provided an accurate report of plaintiff's arrest. *Smith v. Sandusky Newspapers, Inc.*, No. 3:17CV1135, 2018 WL 3046537, at *3-4 (N.D. Ohio June 20, 2018), *appeal dismissed*, No. 18-3695, 2018 WL 5306979 (6th Cir. Sept. 12, 2018). The headline read, "Man steals $22k from rental business," despite the fact that the plaintiff had been arrested, not convicted, and was later exonerated. *Id.* at *1. The court acknowledged that "article's headline, if it stood alone, would be problematic, because it accuses [plaintiff] of committing a felony," but nonetheless dismissed the case, explaining that "Ohio law requires that I read the headline in the broader context in which it appears." *Id.* at *3.

Similarly, the First Circuit affirmed dismissal of a false light claim where the article, as a whole, made clear that an incorrect statement in a photograph caption was simply that: an error. *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 73 (1st Cir. 2005). There, plaintiff alleged that the mis-captioning of a photograph implied that he was a homosexual. *Id.* at 71, 73. Putting aside the separate question of whether a false statement about sexuality could be defamatory, the court ruled that the publication was not capable of the claimed defamatory meaning because the court must "consider all the words used, not merely a particular phrase or sentence." *Id.* at 73 (citation omitted).

In *Sabino v. WOIO, L.L.C.*, the Ohio Court of Appeals drew on a line of cases holding that erroneous newspaper headlines, construed together with accurate articles, are not actionable. 56 N.E.3d 368, 377-78 (Ohio Ct. App. 2016). The court upheld the trial court's finding as a matter of law that an erroneous banner in a television broadcast, reflecting that child pornography had been found on a teacher's laptop computer, was not capable of defamatory

7

construction when viewed in context with the remainder of the broadcast, which was entirely accurate. *Id.* at 380.

Here, the statements in the broadcast accurately reported on the events, charges, and allegations surrounding Plaintiff's arrest. Any reasonable television viewer would not only read the banner but also hear the broadcaster's accurate report of Plaintiff's arrest and reach the obvious conclusion there was simply a mistake in the graphic. *Id.* Thus, the discrepancy, taken with the broadcast as a whole, does not create a defamatory meaning or change the substantial truth of the broadcast itself. Plaintiff's claim should be dismissed with prejudice.

> **B.    Plaintiff's Amended Complaint Should Be Dismissed Because The Scant Allegations of Fact Do Not Support a Claim of Negligence.**

Even if the Court were to view the banner as a basis to find that the broadcast as a whole could be defamatory, Mejia's claim is deficient for a separate and independent ground: The Amended Complaint fails to allege any facts plausibly establishing his conclusory assertion that Telemundo acted "negligently." Am. Compl. ¶ 10. On a motion to dismiss, the Court can "discount such unadorned conclusory allegations . . . 'that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Francis*, 588 F.3d at 193 (quoting *Iqbal*, 562 U.S. at 679). Doing so "recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[E]ven though Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

Federal courts have dismissed defamation claims based on similarly thin allegations of negligence. For instance, in *Jang v. Trustees of St. Johnsbury Academy*, one federal court

concluded that, although the plaintiff's libel complaint alleged the defendants acted "maliciously" as well as "willfully, wantonly, and recklessly," she failed to "connect these conclusory allegations with any recitation of facts from which the Court can infer that [defendants] negligently failed to check the accuracy of the Letter's contents." 331 F. Supp. 3d 312, 351 (D. Vt. 2018), *aff'd*, No. 18-3342, 2019 WL 2635657 (2d Cir. June 275, 2019). Likewise, in *E-Ventures Worldwide, LLC v. Google, Inc.*, another federal court dismissed a defamation claim against Google over its classification of plaintiff's websites as "pure spam." 188 F. Supp. 3d 1265, 1269, 1277-78 (M.D. Fla. 2016). The court rejected the plaintiff's argument that negligence was "implied" because Google had failed to review all of its websites, finding this allegation "insufficient to plead fault for a claim of defamation." *Id.* at 1278; *see also Glocoms Grp., Inc. v. Ctr. for Pub. Integrity*, No. 17-cv-6854, 2018 WL 2689434, at *6 (N.D. Ill. June 5, 2018) (granting motion to dismiss because, "[b]eyond conclusory allegations that CPI published the allegedly defamatory statements 'in full knowledge that they were untrue' and failed 'to fully investigate,' Glocoms fails to plead any supporting facts that raise a reasonable inference of negligence" (citations omitted)); *Hakky v. Wash. Post Co.*, No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6 (M.D. Fla. June 24, 2010) (granting motion to dismiss on grounds that, "[a]lthough Plaintiff does point to specific statements in the Article that are false or misleading, Plaintiff does not state how Defendants made these statements negligently, or facts supporting that they were made with malice").

Under Maryland law, negligence is:

> any conduct, except conduct recklessly disregardful of an interest
> of others, which falls below the standard established by law for
> protection of others against unreasonable risk of harm.  It does not
> exist apart from the facts and circumstances upon which it is
> predicated, necessarily involves the breach of some duty owed by a

9

>    defendant to the plaintiff, and is inconsistent with the exercise of
>    ordinary care.

*Mayor of Balt. v. Hart*, 910 A.2d 463, 472 (Md. 2006) (citations omitted).

Plaintiff, here, has failed to allege any facts that would suggest Telemundo fell below the standard of journalistic care. The Amended Complaint includes only the conclusory assertion that Telemundo acted "negligently," without any "factual enhancement" at all that would support this statement. *See Francis*, 588 F.3d at 193. Plaintiff has not identified any actions or inactions by Telemundo that were "inconsistent with the exercise of ordinary care," *see Hart*, 910 A.2d 472, or "connect[ed] these conclusory allegations with any recitation of facts from which the Court can infer" negligence, *Jang*, 331 F. Supp. 3d at 351. "This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378. The Amended Complaint thus fails to plausibly plead a claim for defamation, and the Court should dismiss it on this basis as well.

> C. **Alternately, the Court Should Strike Plaintiff's Claim for Punitive Damages Because Plaintiff Also Has Not Alleged Facts Demonstrating Actual Malice.**

Separate and apart from the Amended Complaint's failure to state a plausible claim, the Court should strike Mejia's demand for punitive damages because he has not even alleged—much less pleaded facts plausibly establishing—that Telemundo acted with constitutional "actual malice." *See generally Dutra Grp. v. Batterton*, No. 18-266, 2019 WL 2570621, at *9-10 (June 24, 2019) (ruling that punitive damages were unavailable, as a matter of law and reversing denial of motion to strike); *Mitchell v. Lydall, Inc.*, 16 F.3d 410 (table), 1994 WL 38703, at *4 (4th Cir. Feb. 10, 1994) (affirming striking of punitive damages under Rule 12(f)); *CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613, 627 (D. Md. 2002) (striking punitive damages claim where plaintiff failed to allege facts showing requisite common law malice).

Under the First Amendment to the U.S. Constitution, a plaintiff cannot succeed in a punitive damages claim against a media defendant, arising out of reporting on a matter of public concern, without pleading and proving actual malice. *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 756-57 (1985) (where "expression concerned a public issue . . . a State could not allow recovery of presumed and punitive damages absent a showing of actual malice" (internal marks and citations omitted)); *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 166 (4th Cir. 2004) ("Recovery of presumed and punitive damages is permissible only if the defamer acted with actual malice or if the subject matter of the defamatory statement involved a matter of purely private concern." (internal marks and citations omitted)).

Moreover, under Maryland law, "in any defamation action, regardless of a party's status or the subject matter, punitive damages are allowable only if the plaintiff proves that the defamatory statement was made with knowledge of its falsity or with reckless disregard for the truth." *Le Marc's Mgmt. Corp. v. Valentin*, 709 A.2d 1222, 1225 (Md. 1998) (vacating punitive damages award in defamation case for failure to prove actual malice); *Yerkie v. Post-Newsweek Stations, Mich., Inc.*, 470 F. Supp. 91, 93 (D. Md. 1979) ("In defamation actions brought by private plaintiffs, test of 'constitutional malice,' while not required to be met to recover for actual damages, is a prerequisite in Maryland and elsewhere to recover for presumed or punitive damages." (citations omitted)). Even outside of the defamation context, Maryland courts have "consistently required that punitive damages only be awarded based on the defendant's conscious wrongdoing." *Le Marc's Mgmt. Corp.*, 709 A.2d. at 1226.

"Actual malice" in defamation cases is a constitutionally established fault threshold and term of art that means the defendant made the statement with a "high degree of awareness of [its] probable falsity." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 300 (4th Cir. 2008)

(quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)).  To sufficiently plead actual malice, a plaintiff must set forth sufficient facts to plausibly show that the defendant either knew the challenged statements were false or "in fact entertained serious doubts as to the truth of [the] publication." *Mayfield*, 674 F.3d at 377 (citation omitted).  Courts have explained that actual malice requires more than a showing of negligence, that a publication was "erroneous, derogatory or untrue," or that a defendant acted with ill will.  *Capital-Gazette Newspapers v. Stack*, 445 A.2d 1038, 1044 (1982) (citing *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 335 n.6, 340-41 (1974), and *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 281 (1964)).

Mejia's pleading is facially and indisputably deficient.  He claims simply, and baldly, that Telemundo "negligently" aired the broadcast.  Am. Compl. ¶ 10.  This is insufficient.  *See Le Marc's Mgmt. Corp.*, 709 A.2d at 1225.  Because the Amended Complaint fails to allege any facts supporting a plausible theory of actual malice, the Court should strike Plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court dismiss the Amended Complaint against it, with prejudice, award Defendant its fees and costs, and grant such other and further relief as the Court deems just and proper.

Dated: July 16, 2019

                                             Respectfully submitted,

                                             /s/ Chad R. Bowman
                                             Charles D. Tobin
                                             Chad R. Bowman
                                             Jacquelyn N. Schell *(admitted pro hac vice)*
                                             1909 K Street, NW, Suite 1200
                                             Washington, D.C. 20006-1157

T: (202) 508-1136
F: (202) 661-2299
tobinc@ballardspahr.com
bowmanc@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on July 16, 2019, I filed a true and correct copy of the foregoing **Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Strike Claim for Punitive Damages** with the Court's cm/ecf system, which will cause a copy to be served on all counsel of record.

July 16, 2019

/s/ Chad R. Bowman
Chad R. Bowman