IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NEHEMIAS MEJIA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**Telemundo Mid-Atlantic LLC,**<br><br>**Defendant.** | **Civil No.: 8:19-cv-01563-GJH** |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, TO STRIKE CLAIM FOR PUNITIVE DAMAGES**

Telemundo Mid-Atlantic LLC ("Telemundo"), files this memorandum in support of its motion to dismiss Plaintiff's Second Amended Complaint or, in the alternative, to strike Plaintiff's claim for punitive damages (Dkt. 20).

**INTRODUCTION**

Plaintiff's opposition (Dkt. 21-1, "Opp.") only underscores why dismissal of this case is proper. The opposition readily acknowledges the substantial accuracy of Telemundo's broadcast reporting on Plaintiff's arrest in Arlington, Virginia, for serious felonies and misdemeanors. Opp. at 1-2. A banner during a portion of the segment also referenced a different charge in a different location, but the banner must be construed with the rest of the broadcast, which Plaintiff acknowledges was correct. Taken as a whole, the broadcast is not defamatory. The opposition also offers no credible argument that the Second Amended Complaint meets the basic requirements for plausibly pleading fault, under either the negligence standard required for the defamation claim or the actual malice standard required by the U.S. Constitution and Maryland common law to recover punitive damages.

Rather, the opposition recites the elements of a defamation claim at length and rests on principles of defamation *per se*/*per quod* law that are not in dispute in this motion to dismiss. As Plaintiff has failed to demonstrate that the publication as a whole is capable of defamatory meaning and has alleged no set of facts that might establish Telemundo published with the requisite level of fault, the Court should dismiss the Second Amended Complaint with prejudice. The Court also should strike the punitive damages claim because Plaintiff has failed to allege actual malice under the First Amendment and common law malice under state law.

**ARGUMENT**

**A.    The Broadcast, Taken As A Whole, Is Not Capable Of A Defamatory Meaning.**

Plaintiff has not shown that the broadcast, taken as a whole, reasonably conveys an allegedly false and defamatory meaning. Plaintiff does not dispute that he was arrested and pled guilty to certain crimes in Virginia or that the broadcast, as a whole, accurately reported on those crimes. *See* Opp. at 1-3. Plaintiff recites that he was arrested for, "Assault on a Law Enforcement Officer, Grand Larceny, Destruction of Property, Eluding/Disregarding a Police Signal, Fail [*sic*] to Stop and [*sic*] the Scene of an Accident, No Operator's License, and Driving While Intoxicated." *Id*. at 2. He further acknowledges that during the broadcast, the Telemundo anchor reported as follows:

> In Arlington[,] Virginia, authorities arrested a Hispanic man for allegedly stealing a vehicle. This is Nehemias Mejia from Riverdale[,] Maryland. According to police, a vehicle had been reported stolen in Prince George's County. In locating it in Arlington, officials tried to detain him. However, the suspect fled the scene and crashed into a police vehicle. He later tried to flee on foot but was arrested. He faces charges of stealing a vehicle, driving under the influence of alcohol, and assaulting a police officer[,] among others.

*Id.* at 2-3.

Plaintiff does not dispute the case law squarely holding that courts will construe publications like the one at issue as a whole, reject attempts to parse selective language from the overall message, and determine that they are not defamatory as matters of law. *See Browning v. Wash. Post Co.*, 92 F.3d 1177 (table), 1996 WL 439070, at *3 (4th Cir. 1996); *Fernandes v. Tenbruggencate*, 649 P.2d 1144, 1148 n.3 (Haw. 1982) (per curiam) (collecting decisions); *see also Smith v. Sandusky Newspapers, Inc.*, No. 3:17CV1135, 2018 WL 3046537, at *3-4 (N.D. Ohio June 20, 2018), *appeal dismissed*, 2018 WL 5306979 (6th Cir. Sept. 12, 2018); *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72-73 (1st Cir. 2005); *Molin v. Trentonian*, 687 A.2d 1022, 1023-24 (N.J. Super. Ct. App. Div. 1997); *Sabino v. WOIO, L.L.C.*, 56 N.E.3d 368, 377-78 (Ohio Ct. App. 2016).

Maryland law is fully in accord with this basic principle of defamatory construction, which requires that "the publication must be read as a whole." *Piscatelli v. Smith*, 35 A.3d 1140, 1147 (Md. 2012); *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995) ("In determining the defamatory quality of a publication, which is a question of law for the court, the article must be read as a whole."); *Hohman v. A. S. Abell Co.*, 407 A.2d 794, 797 (Md. Ct. Spec. App. 1979) ("It would be a dangerous doctrine, and tend to promote grave injustice, to permit words to be withdrawn from others with which they are connected and used by the publisher, and then impute to them a meaning not warranted by the whole publication." (citation omitted)).[1]

---

[1] Plaintiff addresses only one decision cited for this proposition in Defendant's memorandum (Dkt. 20-1, "Mem."), which Telemundo explained involved a slightly different factual scenario. *See AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990); Mem. at 6, n.4. Plaintiff simply ignores the decisions above, all of which involved comparable headline or banner errors.

Instead of addressing the publication as a whole, Plaintiff asserts that, because the headline references a crime, it constitutes defamation *per se*. For that reason, Plaintiff erroneously contends that he has no other pleading obligations in this case:

> . . . Telemundo's false implication of Mejia in a crime of sexual violence is actionable as defamation *per se*, and therefore not required to plead any facts beyond the defamatory statement itself.

Opp. at 5. This is simply incorrect.[2] Regardless of whether a claim is for defamation *per se* or *per quod*, the plaintiff must still show that the publication, taken as a whole, is capable of the claimed defamatory meaning, and he much allege facts plausibly supporting each and every element of the claim.[3] *See Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009) (requiring, for *per se* or *per quod* claims, allegations supporting all elements of a claim, including "that the defendant made a defamatory statement to a third person" (citation omitted)); *see also Chesapeake Publ'g Corp.*, 661 A.2d at 1174 ("In determining the defamatory quality of a publication, which is a question of law for the court, the article must be read as a whole."). Put

---

[2] Plaintiff also asserts that Telemundo has not aired a retraction, Opp. at 3, but fails to mention that Telemundo offered to do so to Plaintiff's counsel, who responded that he would consult with his client—and then filed this action without responding. In any event, courts routinely reject efforts to rely on decisions not to publish a correction or retraction as evidence of liability. *See D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000) ("There is no authority to support Plaintiffs' argument that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication."), *aff'd*, 270 F.3d 793 (9th Cir. 2001); *Coughlin v. Westinghouse Broad. & Cable, Inc.*, 689 F. Supp. 483, 488 (E.D. Pa. 1988) ("Counsel have not been able to come up with any case in any American jurisdiction which recognizes a claim sounding in damages for failure to retract what is defamatory."), *aff'd*, 866 F.2d 1408 (3d Cir. 1988).

[3] Defamation *per quod* adds a requirement that the plaintiff articulate why the statement might be defamatory, because it would not be apparent on the face of the statement. *See Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979). Defamation *per se* may allow recovery of presumed damages without proof of actual damages, but only if the plaintiff also establishes actual malice. *See Gooch v. Md. Mech. Sys., Inc.*, 567 A.2d 954, 960 (Md. Ct. Spec. App. 1990). Telemundo's motion makes neither argument. Plaintiff's invocation of the *per se/per quod* doctrine is therefore nonresponsive.

differently, even if a statement in a broadcast accuses a person of a crime, the Court still must consider whether the broadcast, taken as a whole, conveys the allegedly false message. *See, e.g.*, *Smith*, 2018 WL 3046537, at *3-4 (dismissing claim based on headline that accused plaintiff of committing a felony, because article as a whole accurately reported that the plaintiff had been arrested).

The Opposition also raises a new, *unpleaded* claim that Plaintiff's employer saw only the banner, without listening to the broadcaster's accurate report. Even if the Second Amended Complaint included Plaintiff's new allegations about his employer—and it does not—the law looks to the "reasonable reader's" understanding of the entire broadcast, not any one subjective understanding. *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 159 (Tex. 2004) ("But we cannot impose civil liability based on the subjective interpretation of a reader who has formed an opinion about the article's veracity after reading a sentence or two out of context; that person is not an objectively reasonable reader.") (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994)).

Here, the broadcast as a whole, watched by a reasonable television viewer, accurately reports on Plaintiff's arrest for serious crimes. Thus, the discrepancy in the graphic, taken with the broadcast as a whole, does not create a defamatory meaning or change the substantial truth of the broadcast itself. Plaintiff's claim should be dismissed with prejudice.

**B.     Plaintiff Has Not Cured His Insufficient Allegations Of Negligence.**

Plaintiff's opposition also fails to explain how the Second Amended Complaint's one, conclusory allegation of negligence satisfies the pleading requirements of *Iqbal* and *Twombly*. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[U]nadorned conclusory allegations . . . 'because they are no more than conclusions, are not entitled to the assumption of truth.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plaintiff simply points to his

allegation that Telemundo is legally responsible for its employees, Opp. at 9-10, but nowhere does that paragraph, or any other portion of the pleading, allege any specific employee conduct, let alone conduct that might, if established, rise to the level of negligence.

Without any factual allegations alleging how Telemundo acted "inconsistent[ly] with the exercise of ordinary care," Plaintiff's claim cannot survive. *See Mayor & City Council of Balt. v. Hart*, 910 A.2d 463, 472 (Md. 2006) (citations omitted); *Jang v. Trs. of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 351 (D. Vt. 2018) (requiring that plaintiff "connect these conclusory allegations with any recitation of facts from which the Court can infer" negligence), *aff'd*, 771 F. App'x 86 (2d Cir. 2019).

### C. Plaintiff Has Not Identified Allegations Supporting His Claim Of Actual Malice, So The Court Should Strike The Claim For Punitive Damages.

Plaintiff does not dispute that the First Amendment to the U.S. Constitution and Maryland law require allegations of actual malice to state a claim for punitive damages. *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 166 (4th Cir. 2004) ("Recovery of presumed and punitive damages is permissible only if the defamer acted with actual malice or if the subject matter of the defamatory statement involved a matter of purely private concern." (internal marks and citations omitted)); *Le Marc's Mgmt. Corp. v. Valentin*, 709 A.2d 1222, 1225 (Md. 1998) (vacating punitive damages award in defamation case for failure to prove actual malice).

Instead, Plaintiff argues that a mistake in the banner automatically qualifies as actual malice. Plaintiff thus mistakenly conflates alleged falsity with fault. A statement can be wrong or mistaken without being made with actual malice. *Bose Corp. v. Consumers Union*, 466 U.S. 485, 487 (1984) ("[T]here is a significant difference between proof of actual malice and mere proof of falsity"). Falsity and fault are two separate inquiries for important constitutional

reasons—including expressly to give the press some "breathing space" for the mistakes that inevitably occur in the course of news gathering and reporting. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (discussing importance of "breathing space" in the "tension [that] necessarily exists between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury"); *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001) ("However, the First Amendment does not require perfection from the news media.").

Here, Plaintiff has alleged falsity, but he has not proffered specific factual allegations plausibly establishing a knowing falsity or reckless disregard for the truth, as required to allege actual malice. *See Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (". . . malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated"). And, contrary to Plaintiff's contention, the law does not impute the knowledge of the broadcaster to the individual who posted the banner. The Supreme Court, in *New York Times Co. v. Sullivan*, rejected exactly this argument. 376 U.S. 254, 287 (1964). There, the plaintiff contended that the existence of a contrary story in the New York Times' files showed that the advertisement at issue was published with knowledge of the falsities at issue. *Id.* The Court rejected this argument, explaining:

> The mere presence of the stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement.

*Id.* Like Sullivan, Plaintiff has not presented any plausible argument that the person posting the mistaken banner, which referenced a different charge in a different jurisdiction that the ones accurately discussed in the newscast, did so purposefully, and while "entertain[ing] serious doubts as to the truth of his publication." *Hugger*, 94 F. App'x at 166. Rather, the plausible theory presented by the allegations is that the banner was a mistake, and the law is clear that a

7

mere error, without more, does not constitute actual malice. *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 83 n.3 (D.D.C. 2012) (identifying error and finding that "this mistake is careless but does not show actual malice").

## CONCLUSION

For the reasons stated above and its moving papers, Telemundo respectfully requests that the Court dismiss the Second Amended Complaint against it, with prejudice, award Telemundo its fees and costs, and grant such other and further relief as the Court deems just and proper.

Dated: October 1, 2019

Respectfully submitted,

 */s/ Chad R. Bowman*
Charles D. Tobin
Chad R. Bowman
Jacquelyn N. Schell *(admitted pro hac vice)*
1909 K Street, NW, Suite 1200
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299
tobinc@ballardspahr.com
bowmanc@ballardspahr.com
schellj@ballardspahr.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on October 1, 2019, I filed a true and correct copy of the foregoing **Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint or, in the Alternative, to Strike Claim for Punitive Damages** with the Court's CM/ECF system, which will cause a copy to be served on all counsel of record.

October 1, 2019

*/s/ Chad R. Bowman*
Chad R. Bowman